**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| 4: TWENTY MEDIA INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 6:12-cv-00031 |
| | ) | |
| SWARM SHARING HASH FILES | ) | |
| 6D59B29B0E51E9B5B4C0F9192CE99ED5EC5457E8, | ) | |
| 6FC0F9C7F041DC36283D54B1FA29E993EA3EC2A8, | ) | |
| F1F946C2054A0F885AC01FB07A935F4F238DD391; | ) | |
| AND DOES 1-1,341. | ) | ***JURY TRIAL DEMANDED*** |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS *EX PARTE* MOTION**
**FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS…………………………………………………………   i

TABLE OF AUTHORITIES………………………………………………………...   iii

I.   Introduction………………………………………………………………   1

II.   Argument…………………………………………………………….......   2

    a.   Court Precedent Allows for Expedited Discovery to Identify the Doe
Defendants……………………………….….....................................   2

    b.   Plaintiff Alleges Copyright Infringement Based on Doe Defendants'
BitTorrent Activity……………………………………………………….   5

        i.   Defendants' Infringing Activity………………………………   5

        ii.   Preliminary Identification of Defendants……………………...   8

        iii.   Plaintiff's Confirmation of Copying…………………………..   11

        iv.   The Specific Information Plaintiff Seeks……………………...   11

    c.   Plaintiff Can Show that Good Cause Exists for the Expedited
Discovery…………………………………………………………………   13

        i.   Plaintiff has Identified the Doe Defendants with Sufficient
Specificity………………………………………………………..   13

        ii.   Plaintiff has Identified all Previous Steps to Locate Defendants….   14

        iii.   Plaintiff's Suit against Defendants Could Withstand a Motion
to Dismiss…………………………………………………………….   15

        iv.   There is a Reasonable Likelihood of Being Able to Identify
Defendants…………………………………………………………   17

    d.   The Discovery Sought is Proper as to All 1,341 Doe Defendants……...   17

        i   Each Doe Defendant Participated in the Same Transaction or
Occurrence or Series of Transactions…………………………...   18

        ii.   There are Questions of Law or Fact Common to All Defendants…   21

      iii.    There is no Prejudice to any Party or Needless Delay……………    22

III.    Conclusion………..……………………........................................................    22

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                  **<u>Page</u>**

*Acevedo v. Allsup's Convenience Stores, Inc.,*……………………………………… 17, 18
    600 F.3d 516 (5th Cir. 2010)

*AF Holdings v. Does 1-97,*…………………………………………………………… 3
    No. C 11-3067 CW, 2011 WL 5195227 (N.D. Cal. Nov. 1, 2011)

*Applewhite v. Reichhold Chems., Inc.,*……………………………….................... 18
    67 F.3d 571 (5th Cir. 1995)

*Arista Records LLC v. Does 1-19,*…………………………………….............. 3
    551 F. Supp. 2d 1 ( D.D.C. April 28, 2008)

*Bridgmon v. Array Sys. Corp.,*……………………………………………… 15, 16
    325 F.3d 572 (5th Cir. 2003)

*Call of the Wild Movie, LLC v. Does 1-1062,*………………………………….. 21, 22
    770 F. Supp. 2d 332 (D.D.C. 2011)

*Caroline Records, Inc. v. Does 1-175,*…………………………………….. 3
    No. 04 2028 (D.D.C. Nov. 18, 2004)

*Checkpoint Fluidic Sys, Int'l, Ltd. v. Guccione,*……………………………….. 17, 21
    No. 10-4505, 2011 WL 3268386 (E.D. La. July 28, 2011)

*Cole v. Brazos County, Tex.,*…………………………………………………. 2
    981 F.2d 237 (5th Cir. 1983)

*Columbia Ins. Co. v. Seescandy.com,*……………………………………… 14, 17
    185 F.R.D. 573 (N.D. Cal. 1999)

*Columbia Pictures Indus., Inc. v. John Doe,*……………………………………. 3
    No. 05-0134Z (W.D. Wash. Feb. 22, 2005)

*Columbia Pictures Indus., Inc. v. John Doe 1-10,*…………………………… 3
    No. 1:05-cv-515-BBM (N.D. Ga. Mar. 22, 2005)

*Columbia Pictures Indus., Inc. v. John Does 67.123.19.140,*……………………... 3
    No. C 04 5243 PJH (N.D. Cal. Jan. 20, 2005)

*Dean v. Barber,*……………………………………………………………… 2
    951 F.2d 1210 (11th Cir. 1992)

*Disney Enters., Inc. v. Does 1-18,* ………………………………………………  3
    No. 05-RB-339 (CBS) (D. Colo. Mar. 24, 2005)

*Dykes v. Maverick Motion Picture Group, L.L.C.,*…………………………………  4
    No. 08-536-JJB-DLD, 2010 WL 4181448 (M.D. La. Oct. 20, 2010)

*Energy Prod. Corp. v. Northfield Ins. Co.,*………………………………...................  4
    No. 10-0933, 2010 WL 3194232 (E.D. La. Aug. 6, 2010)

*Equidyne Corp. v. Does 1-21,*………………………………………………………  2
    279 F. Supp. 481 (D. Del. 2003)

*First Time Videos, LLC v. Does 1-76*………………………………………………  3
    276 F.R.D. 254 (N.D. Ill. Aug. 16, 2011)

*Gallegos v. Slidell Police Dept.,*…………………………………………...  2
    304 Fed. Appx. 327 (5th Cir. 2008)

*Gillespie v. Civiletti,* ……………………………………………………… .  2
    629 F.2d 637 (9th Cir. 1980)

*Green v. Doe,*………………………………………………………………  2
    260 Fed. Appx. 717 (5th Cir. 2007)

*Hard Drive Prods., Inc. v. Does 1-30,*…………………………………………..........  3
    No. 2:11-cv-345, 2011 WL 2634166 (E.D. Va. July 1, 2011)

*In re Countrywide Fin. Corp.,*………………………………………………… .......  4
    542 F. Supp. 2d 1160 (C.D. Cal. 2008)

*Interscope Records, et al. v. Does 1-5*………………………………………………  3
    No. 3:07-01424, Docket No. 5 (W.D. La. Aug. 29, 2007)

*K-Beech, Inc. v. Does 1-57*………………………………………………………  3
    No. 2:11-cv-358-FtM-36SPC, 2011 WL 5597303 (M.D. Fla. Nov. 1, 2011)

*Liberty Media Holdings, LLC v. Swarm sharing Hash File*
    *AE340D056129AFEE8D78CE07F2394C7B5BC9C05*...................................  3
    ---F. Supp. 2d ---, 2011 WL 5161453 (D. Mass. Oct. 31, 2011)

*Lions Gate Films, Inc. v. Does 1-5,*………………………………………………...  3
    No. 05-386 (EGS) (D.D.C. Mar. 1, 2005)

*Lions Gate Films, Inc. v. Does 1-23,*………………………………………………  3
    No. 04-7398 (N.D. Ill. Nov. 18, 2004 )

*London-Sire Records, Inc. v. Doe 1*,……………………………………….. 22
    542 F. Supp. 2d 153 (D. Mass. 2008)

*Maclin v. Paulson*,………………………………………………………… 2
    627 F.2d 637 (9th Cir. 1980)

*Mayer Pictures Inc. v. Does 1-10*,……………………………………… 3
    No. 04-2005 (JR) (D.D.C. Nov. 23, 2004)

*MCGIP, LLC v. Does 1-149*,……………………………………………… . 13, 18
    2011 WL 3607666 (N.D. Cal. Aug. 15, 2011)

*Metro-Goldwyn-Mayer Pictures Inc. v. Does 1-2*,………………………….. .. 3
    No. 05-0761 – B (POR) (S.D. Cal. Apr. 27, 2005)

*Metro-Goldwyn-Mayer Pictures Inc. v. Does 1-10*,……………………….. 3
    No. 04-2005 (JR) (D.D.C. Nov. 23, 2004)

*Munz v. Parr*,…………………………………………………………… 2
    758 F.2d 1254 (8th Cir. 1985)

*Murphy v. Goord*,…………………………………….................................. 2
    445 F. Supp. 2d 261 (W.D.N.Y. 2006)

*New Sensations, Inc. v. Does 1-1474*,……………………………………...3, 4, 13
    No. C 11-2770 MEJ, 2011 WL 4407222 (N.D. Cal. Sept. 22, 2011)

*OpenMind Solutions, Inc. v. Does 1-39*,…………………………………… 3
    2011 WL 4715200 (N.D. Cal. Oct. 7, 2011)

*Pac. Century Int'l, Ltd. v. Does 1-48*……………………..................... 3
    No. C 11-3823 MEJ, 2011 WL 4725243 (N.D. Cal. Oct. 7, 2011)

*Paramount Pictures Corp. v. Does 1-8*,…………………………………… 3
    No. 05535 (D.N.J. Jan. 28 2005)

*Paramount Pictures Corp. v. Does 1-11*,………………………………... 3
    No. 4 05-00335CAS (E.D. Mo. Feb. 25. 2005)

*Patrick Collins, Inc. v. Does 1-22*,…………………………………… 3
    No. 11-01772 AW, 2011 WL 5439005 (D. Md. Nov. 8, 2011)

*Patrick Collins, Inc. v. Does 1-2590*,…………………………………..…*passim*
    No. C 11-2766 MEJ, 2011 WL 4407172 (N.D. Cal. Sept. 22, 2011)

*Phillip Morris USA, Inc. v. TRAN, Inc.,*…………………………………………………………  4
     No. 03-158-, 2003 WL 22012668 (M.D. La. Mar. 5, 2003)

*Screen Gems, Inc., et al. v. Does 1-34,*…………………………………………………………  3
     No. SAO4CA10380G (W.D. Tex. Nov. 30, 2004)

*Twentieth Century Fox Film Corp. v. Does 1-9,*…………………………………….......  3
     No. 04-2006 (EGS) (D.D.C. Dec. 15, 2004)

*UMG Recordings, et al. v. Does 1-199,*……………….…………………...............  3
     No. 04-093 (CKK) (D.D.C. Mar. 11, 2004)

*United Mine Workers v. Gibbs,*………………………………………………..  18
     383 U.S. 715 (1966)

*Valentin v. Dinkins,*…………….................................................  2
     121 F.3d 72 (ed Cir. 1997)

*Warner Bros. Entertainment, Inc. v. Does 1-7,*…………………………………  3
     No. 05-0883 (S.D.N.Y. Jan. 26, 2005)

Statutes

FED. R. CIV. P. 20 (a)(2)………………………………………………………………  17

FED. R. CIV. P. 20 (a)(2)(B)……………………………………………………………  21

FED. R. CIV. P. 26(b)(1)……………………………………………………………….  4

FED. R. CIV. P. 26(f)…………………………………………………………………… 1, 22

### I. Introduction

Plaintiff 4: Twenty Media, Inc., a filmmaker and motion picture copyright-holder, has filed a suit alleging copyright infringement by 1,341 John Doe Defendants. Plaintiff is the copyright holder of exclusive rights to reproduce and distribute its Motion Picture, *Teen Anal Sluts* ("Motion Picture"), in the United States. Despite Plaintiff's exclusive rights, each one of the identified John Does has used an Internet file sharing protocol called BitTorrent to copy and reproduce Plaintiff's Motion Picture over the Internet. Defendants' actions have resulted in the unauthorized and viral dissemination of Plaintiff's copyrighted Motion Picture.

Despite Plaintiff's best efforts, each of these John Does can only be identified at this point by their individual and unique Internet Protocol addresses ("IP" addresses). These IP addresses are assigned to each John Doe by non-party Internet Service Providers ("ISPs"), the companies through which Defendants obtain Internet access. Defendants' actual names and contact information are readily available to the ISPs from documents ISPs keep in the regular course of business, such as billing records. Once Plaintiff is in possession of such information, Plaintiff can then proceed with this action.

Accordingly, Plaintiff seeks leave of Court to serve limited discovery prior to a Rule 26(f) conference on several of the non-party ISPs to determine the true identities of the Doe Defendants, as well as any other infringers that Plaintiff identifies during the course of this litigation, as Plaintiff's infringement monitoring efforts are on-going and continuing.[1]

---

[1] Because Plaintiff does not currently know the identity of any of the Defendants, Plaintiff cannot ascertain any of the Defendants' positions on this motion or serve any of the Defendants with this Motion.

## II. Argument

### a. Court Precedent Allows for Expedited Discovery to Identify the Doe Defendants.

Courts regularly allow discovery to identify "John Doe" defendants. *See, e.g.*, *Green v. Doe*, 260 Fed. Appx. 717, 721 (5th Cir. 2007). *See also Gallegos v. Slidell Police Dept.*, 304 Fed. Appx. 327, 328 (5th Cir. 2008) (Plaintiff likely entitled to conduct discovery to determine identities of unnamed defendants). This discovery standard is not reserved to the Fifth Circuit, but extends to courts throughout the country.[2] The Fifth Circuit provides a clear standard for discovery regarding "John Doe" defendants, reinforcing that "the only reason to sue a 'John Doe' is to conduct discovery backed by the authority of the court." *Id.* Should a court deny discovery as to the identity of a John Doe, the "John Doe" becomes a nullity. *Id.* Thus, the use of "John Doe" "serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Id.* (*citing Cole v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1983)).

In similar copyright infringement cases brought by motion picture studios and record companies against Doe defendants, courts have consistently granted plaintiffs' motions for leave to take expedited discovery.[3] This Court permitted plaintiffs to serve a subpoena on an ISP to

---

[2] *See, e.g.*, *Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006) (where identity of alleged defendants may be unknown prior to filing of complaint, plaintiff should have opportunity to pursue discovery to identify unknown defendants); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (plaintiff should have been permitted to conduct discovery to reveal identity of defendant); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny plaintiffs motion to join John Doe defendant where identity of John Doe could have been determined through discovery); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because defendant was unnamed); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity ... plaintiff should have been permitted to obtain their identity through limited discovery"); *Equidyne Corp. v. Does 1-21*, 279 F. Supp. 2d 481, 483 (D. Del. 2003) (allowing pre-Rule 26 conference discovery from ISPs to obtain identities of users anonymously posting messages on message boards).

[3] *See, e.g.*, *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 7 (D.D.C. Apr. 28, 2008); *Metro-Goldwyn-*

obtain the identities of Doe defendants (known only by their IP addresses at the time of filing) prior to a Rule 26 conference.  Exhibit A, *Interscope Records, et al. v. Does 1-5*, No. 3:07-01424, Docket No. 5 (W.D. La. Aug. 29, 2007) (Hayes, Mag. J.) Other courts around the country have also allowed this form of discovery. *See, e.g., New Sensations, Inc. v. Does 1-1,474*, No. C 11-2770 MEJ, 2011 WL 4407222, at *2-4 (N.D. Cal. Sept. 22, 2011); *Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D056129AFEE8D78CE07F2394C7B5BC9C05*, --- F. Supp. 2d ---, 2011 WL 5161453 (D. Mass. Oct. 31, 2011); *Patrick Collins, Inc. v. Does 1-2,590*, No. C 11–2766 MEJ, 2011 WL 4407172, at *1-4 (N.D. Cal. Sept. 22, 2011); *OpenMind Solutions, Inc. v. Does 1-39*, 2011 WL 4715200, at *2-5 (N.D. Cal. Oct. 7, 2011); *Pac. Century Int'l, Ltd. v. Does 1-48*, No. C 11-cv-3823 MEJ, 2011 WL 4725243, at *1-5 (N.D. Cal. Oct. 7, 2011); *Patrick Collins, Inc. v. Does 1-22*, No. 11-cv-01772-AW, 2011 WL 5439005, at *1 (D. Md. Nov. 8, 2011); *K-Beech, Inc. v. Does 1-57*, No. 2:11–cv–358–FtM–36SPC, 2011 WL 5597303, at *1 (M.D. Fla. Nov. 1, 2011); *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 255-256 (N.D. Ill. Aug. 16, 2011); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11-cv-345, 2011 WL 2634166 (E.D. Va. July 1, 2011).[4]

---

*Mayer Pictures Inc. v. Does 1-10*, No. 04-2005 (JR) (D.D.C. Nov. 23, 2004); *Twentieth Century Fox Film Corp. v. Does 1-9*, No. 04-2006 (EGS) (D.D.C. Dec. 15, 2004); *Lions Gate Films, Inc. v. Does 1-5*, Case No. 05-386 (EGS) (D.D.C. Mar. 5, 2005); *UMG Recordings, et al. v. Does 1-199*, No. 04-093 (CKK) (D.D.C. Mar. 11, 2004); *Caroline Records, Inc. v. Does 1-175*, No. 04 2028 (D.D.C. Nov. 18, 2004); *Paramount Pictures Corp. v. Does 1-8*, Case No. 05535 (D.N.J. Jan. 28, 2005); *Columbia Pictures Indus., Inc. v. John Doe*, No. CV05-0134Z (W.D. Wash. Feb. 22, 2005); *Warner Bros. Entertainment Inc. v. Does 1-7*, Case No. 05 CV 0883 (S.D.N.Y. Jan. 26, 2005); *Screen Gems, Inc., et al. v. Does 1-34*, No. SAO4CA10380G (W.D. Tex. Nov. 30, 2004); *Columbia Pictures Indus., Inc. v. Does 1-10*, No. 1:05CV515-BBM (N.D. Ga. Mar., 22, 2005); *Lions Gate Films, Inc. v. Does 1-23*, No. 04 C 7398 (N.D. Ill. Nov. 18, 2004); *Paramount Pictures Corp. v. Does 1-11*, No. 4 05CV00335CAS (E.D. Mo. Feb. 25, 2005); *Columbia Pictures Indus., Inc. v. John Doe 67.123.19.140*, No. C 04 5243 PJH (N.D. Cal. Jan. 20, 2005); *Metro-Goldwyn-Mayer Pictures Inc. v. Does 1-2*, No. 05CV0761-B(POR) (S.D. Cal. Apr. 27, 2005); *Disney Enters., Inc. . Does 1-18*, No. 05-RB-339(CBS) (D. Colo. Mar. 24, 2005).

[4] Although there are courts that have denied plaintiffs' motions for expedited discovery, or granting expedited discovery subject to restrictions, those cases can be distinguished.  *See, e.g., AF Holdings v. Does 1-97*, No. C 11-3067 CW, 2011 WL 5195227 (N.D. Cal. Nov. 1, 2011).  In *AF Holdings*, the court granted expedited discovery as to only John Doe 1, but severed Does 2-97.  As part of its reasoning, the court held that plaintiff failed to allege that

For example, in *New Sensations*, the court found Plaintiff demonstrated that good cause existed to grant leave to conduct early discovery. *New Sensations*, 2011 WL 440722 at *4.  The court also found that expedited discovery furthered the interests of justice and presented minimal inconvenience to the ISPs to which the discovery was directed. *Id.*

Courts have wide discretion in all discovery matters. *Dykes v. Maverick Motion Picture Group, L.L.C.*, No. 08-536-JJB-DLD, 2010 WL 4181448, at *1 n.2 (M.D. La. Oct. 20, 2010). *See also* FED. R. CIV. P. 26(b)(1).  In order to obtain expedited discovery, a plaintiff need only make a showing of good cause. *Energy Prod. Corp. v. Northfield Ins. Co.*, No. 10-0933, 2010 WL 3184232, at *3 (E.D. La. Aug. 6, 2010). *See also Phillip Morris USA, Inc. v. TRAN, Inc.*, No. 03-158, 2003 WL 22012668, at *1 (M.D. La. Mar. 5, 2003).  Specifically, "courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Energy Prod.*, 2010 WL 3194232, at *3 (*quoting In re Countrywide Fin. Corp.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008)).

Courts consider the following factors when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe defendant; (3) whether the plaintiff's suit could withstand a motion to dismiss; and (4)

---

"any of the ninety-seven Doe Defendants exchanged any piece of the relevant [infringing] file with each other" or that there was any contemporaneous interaction with any of the named Does.  *Id.* at *2-3.  This case is distinguishable. First, the Complaint here specifically addresses these concerns at paragraph 12. Second, the reasoning in *AF Holdings* ignores a common theory of conspiracy, conspiracy which exists amongst the defendants here. This is, specifically, when terrorists work together through separate cells, multiple wrongdoers work as part of a single unit (such as a swarm), and are by nature working together in pursuit of both individual goals and the ultimate goal of the collective group, even though such conspirators may not directly interact with each other.

whether there is a reasonable likelihood of being able to identify defendants.  *Patrick Collins, Inc. v Does 1-2,590*, 2011 WL 4407172, at *1-5.

### b.  Plaintiff Alleges Copyright Infringement Based on Doe Defendants' BitTorrent Activity.

As alleged in the Complaint, the Doe Defendants, without authorization, used an online peer-to-peer ("P2P") media distribution system called BitTorrent to download the copyrighted Motion Picture and distribute it to other users.  *See* Complaint at ¶¶ 7-9.  In doing so, each Defendant made the copyrighted Motion Picture for which Plaintiff holds the exclusive sale and distribution rights available for distribution to others.  *Id*.  In the instant case, Plaintiff has engaged Copyright Defenders, Inc. ("Copyright Defenders"), a provider of online anti-piracy services for the motion picture industry, to monitor this infringing activity.  Declaration of Mr. Matthias Schroeder Padewet at ¶¶ 1,6.

### i.  Defendants' Infringing Activity.

The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  Mr. Padewet Decl. at ¶ 4.  It allows hundreds of millions of people around the world to freely and easily exchange ideas and information, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.  *Id*.  Unfortunately, the Internet also has afforded opportunities for the wide-scale infringement of copyrighted motion pictures.  *Id*.  Once a motion picture has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.  *Id*.

To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called "peer-to-peer" ("P2P") networks.  *Id*. at ¶ 5.

P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  *Id*.

At any given moment and depending on the particular P2P network involved, anywhere from thousands to millions of people, both across the country and around the world, unlawfully use the P2P network to connect to one another's computers to upload (distribute) and/or download (copy) copyrighted material.  The P2P systems represent a "viral" distribution of digital files: each user of the system who copies a digital file from another user can then distribute the file to still other users and so on, so that copies of an infringing file can be rapidly distributed to millions of people worldwide.  *Id*. at ¶¶ 22.  Plaintiff has observed the infringement occurring on the Internet, but does not know the true identities of the individuals who are committing the infringement at this time.  *Id*. at ¶¶ 23-25, 30.

In monitoring the infringement of Plaintiff's Motion Picture, Copyright Defenders observed P2P functions that enable even small computers with low bandwidth to participate in large data transfers, such as across a P2P network.   *Id*. at ¶ 8.   The initial file-provider intentionally elects to share a file using a P2P network.  *Id*.  This is called "seeding."  *Id*.  Other users ("peers") on the network connect to the seed file to download.  *Id*.

The particular P2P protocol at issue in this suit is called "BitTorrent."   *Id*. at ¶ 9.  What makes BitTorrent unique is that, as yet additional peers request the same file, each additional user becomes a part of the network from where the file can be downloaded.  *Id*.  However, unlike a traditional P2P network, each new file downloader is receiving a portion of the data from each connected user who has already downloaded a part of the file that together comprises the whole.

*Id*.  This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network investigated by Copyright Defenders' software must necessarily also be a source of download for that infringing file.  *Id*.

Each of the Defendants utilized the BitTorrent process to engage in the unauthorized distribution and sharing of Plaintiff's motion picture.   In order to have engaged in the unauthorized distribution and sharing of Plaintiff's copyrighted Motion Picture, each of the participating peers intentionally obtained a torrent file for Plaintiff's Motion Picture from the video index of a BitTorrent website or other torrent site.   *Id*. at ¶¶ 10-15.   Each of the participating peers then intentionally loaded that torrent file into a computer program downloaded onto their computer that is specifically designed to read such files.  *Id*.  With the torrent file loaded, the BitTorrent program employed the BitTorrent protocol to initiate simultaneous connections to hundreds of other peers possessing and sharing copies of the digital media – Plaintiff's copyrighted Motion Picture – described in the torrent file.  *Id*.

Once connected, the program began coordinating the copying of Plaintiff's copyrighted Motion Picture among participating peer computers.  *Id*. at ¶ 17.  As the film was copied to the peers' computers piece by piece, the downloaded pieces were immediately made available to other connected peers seeking to obtain the file.  *Id*.

The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency.  *Id*. at 13.  This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the addresses of other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.  *Id*.  The hash identifiers of the torrent files utilized by each of the peers to illegally distribute and share Plaintiff's copyrighted Motion Picture are as follows:

6D59B29B0E51E9B5B4C0F9192CE99ED5EC5457E8 ("Hash 6D5"),

6FC0F9C7F041DC36283D54B1FA29E993EA3EC2A8 ("Hash 6FC"), and

F1F946C2054A0F885AC01FB07A935F4F238DD391 ("Hash F1F").

*Id*.  Each of the peers is a member of at least one "swarm" or group of BitTorrent peers whose computers are collectively connected for the sharing of a particular hash file, in this instance, Plaintiff's copyrighted Motion Picture, and the swarm each of the peers participated in is associated with is one or more of the foregoing unique hash identifiers.  *Id*. at ¶ 18.

Each of the peers participated in at least one swarm for the purpose of the reproduction and distribution of Plaintiff's copyrighted Motion Picture.  *Id*. at ¶ 21.  In addition, it appears that as many as 23 of the peers participated in multiple swarms, evidencing a commingling of the three swarms.  Complaint at ¶¶ 5, 49; Complaint at Exhibit A.  Specifically, the IP addresses of John Does 20, 45, 56, 57, 68, 69, 71, 75, 77, and 88 appear in two swarms, sharing both Hash F1F and Hash 6D5; the IP addresses of John Does 154, 157, 170, 174, 180, 181, 182, 185, 186, 188, 189, 191, and 192 appear in two swarms, sharing both Hash 6FC and Hash 6D5.  Complaint at ¶¶ 5, 49; Complaint at Exhibit A.

### ii.  Preliminary Identification of Defendants.

On behalf of Plaintiff, Copyright Defenders engaged in a specific process utilizing its specially designed software technology to identify direct infringers of Plaintiff's copyright.  Mr. Padewet Decl. at ¶ 6, 9.  Copyright Defenders identified all Defendants in the following manner. Copyright Defenders' software is connected to a number of files of illegal versions of the Motion Picture.   *Id*. at ¶ 24.   All infringers connected to those files were investigated through downloading a part of the file placed on their computer. *Id*.  This evidence is saved on Copyright Defenders' service and could be shown to the court as evidence if necessary.  *Id*.

Once Copyright Defenders' searching software program identifies an infringer in the way described herein for the Motion Picture for which Plaintiff owns the exclusive licensing and distribution rights, Copyright Defenders obtains the IP address of a user offering the file for download. *Id.* at ¶ 25.  In addition to the file of the motion picture itself, Copyright Defenders downloads or otherwise collects publicly available information about the network user that is designed to help Plaintiff identify the infringer.  *Id.*  Among other things, Copyright Defenders downloads or records for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; (c) the ISP for each defendant; and, in some cases, (d) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file, (e) the BitTorrent client application used by each user, (f) the global unique identifier for each file downloaded by each user, and (g) the location of most users (by state) at the time of download as determined by geolocation technology.  *Id.*  Copyright Defenders then creates evidence logs for each user and store all this information in a database.  *Id.*

An IP address is, in combination with the date, a unique numerical identifier that is automatically assigned to a user by its ISP each time a user logs on to the network.  *Id.* at ¶ 28.  Each time a subscriber logs on, he or she may be assigned a different IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses.  *Id.*  ISPs keep track of the IP addresses assigned to subscribers at any given moment and retain such "user logs" for a very limited amount of time.  *Id.*  These user logs provide the most accurate means to connect an infringer's identity to its infringing activity.  *Id.*

Although users' IP addresses are not automatically displayed on the P2P networks, any user's IP address is readily identifiable from the packets of data being exchanged. *Id*. at ¶ 29. The exact manner in which Copyright Defenders determines a user's IP address varies by P2P network. *Id*.

An infringer's IP address is significant because it becomes a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet. *Id*. at ¶ 30. However, the IP address does not enable Copyright Defenders to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. *Id*. It only enables Copyright Defenders to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area. *Id*. Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet. *Id*. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet. *Id*.

Here, the IP addresses Copyright Defenders identified for Plaintiff enable Copyright Defenders to determine which ISP was used by each infringer to gain access to the Internet. *Id*. at ¶ 31. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs. *Id*. However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. *Id*. Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. *Id*. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants. *Id*. Copyright Defenders

determined that the Doe Defendants here were using those ISPs listed in Exhibit A to Plaintiff's Complaint together with various other ISPs operating both within and outside Louisiana, to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted Motion Picture.  *Id.*

### iii.   Plaintiff's Confirmation of Copying.

Copyright Defenders confirms that the digital audiovisual files it downloaded are actual copies of Plaintiff's Motion Picture.  *Id.* at ¶ 35.  Part of Mr. Padewet's responsibilities at Copyright Defenders are to confirm that the digital audiovisual files downloaded by Copyright Defenders are actual copies of Plaintiff's Motion Picture.  *Id.* at ¶ 34.  It is possible for digital files to be mislabeled or corrupted; therefore, Copyright Defenders (and accordingly, Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also confirms through a visual comparison between the downloaded file and the motion picture itself.  *Id.*

As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, Mr. Padewet or one of his assistants has watched a copy of the Motion Picture provided by Plaintiff.  *Id.* at ¶ 35.  The downloaded files have been carefully reviewed and compared by a visual comparison with the original Motion Picture.  *Id.*  It has been confirmed that they contain a substantial portion of the Motion Picture identified in the Complaint and that the Motion Picture contains a copyright notice and warning that unauthorized copiers will be prosecuted.  *Id.*

### iv.   The Specific Information Plaintiff Seeks.

Exhibit A to the Complaint provides the Court with the IP addresses identified for Doe Defendants as well as the ISPs associated with each of the IP addresses Plaintiff has identified as providing services to Doe Defendants that have infringed Plaintiff's Motion Picture.  Complaint

at ¶ 56; Complaint at Exhibit A.  This data constitutes the information obtained up to the date of the filing of the Complaint.  Plaintiff specifically requests leave to conduct discovery on all of the Doe Defendants ISPs it has been able to identify to date, as well as any other infringers that Plaintiff identifies during the course of this litigation, in order to learn the Doe Defendants' identities including name, contact information (address, etc.).

Using the above-described methodology, and acting on behalf of Plaintiff, Copyright Defenders was able to identify at least the following information regarding each Doe Defendant: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement, and (c) the ISP providing service to the each user at the time of infringement; and, in some cases, (d) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file, (e) the BitTorrent client application used by each user, (f) the global unique identifier for each file downloaded by each user, and (g) the location of most users (by state) at the time of download as determined by geolocation technology.  Mr. Padewet Decl. at ¶ 25.

Despite Copyright Defenders' best efforts, it is impossible for Plaintiff to identify Defendants by name at this time.  *See, id.* at ¶ 30.  The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant Does 1-1,341 are within the custody and control of each Defendant Doe's ISP, which records the account holders for the IP addresses and maintains billing records associated therewith.  *See, id.* at ¶ 32.  Copyright Defenders has identified the ISPs associated with Defendant Does at this time as follows: Comcast Corporation, Cox Enterprises (subsidiary of Cox Communications Inc.), Verizon Communications Inc., Road Runner (affiliate of Time Warner Cable Inc.), CenturyLink, Inc. (formerly Qwest

Communications), Frontier Communications Corporation, Charter Communications Inc., Windstream Corporation, Clearwire Corporation, WOW! (formerly Wide Open West), Bresnan Communications (Cablevisions Systems Corporation), Earthlink, Inc., Insight Communications Company, Inc., Optimum (Cablevisions Systems Corporation), Road Runner Business (affiliate of Time Warner Cable Inc.), and Sprint PCS d/b/a Sprint Solutions, Inc. Complaint at Exhibit A.

### c.   Plaintiff Can Show that Good Cause Exists for the Expedited Discovery.

Courts regularly consider four factors to determine that good cause exists when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe defendant; (3) whether the plaintiff's suit could withstand a motion to dismiss; and (4) whether there is a reasonable likelihood of being able to identify defendants. *Patrick Collins, Inc. v Does 1-2,590*, 2011 WL 4407172, at *1-5. *See also New Sensations*, 2011 WL 4407222, at *1-4. Plaintiff easily meets these four factors.

### i.   Plaintiff has Identified the Doe Defendants with Sufficient Specificity.

Plaintiff identified the Doe Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court.  In a factually identical case, the Northern District of California held that "the plaintiff had identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day is alleged the particular defendant engaged in the infringing conduct." *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *2 (quoting *MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011)).

Plaintiff has provided such a chart.  Complaint at Exhibit A. Plaintiff relied on Copyright Defenders which utilized its specially designed software technology to identify direct infringers of Plaintiff's copyrights using protocols.   Mr. Padewet Decl. at ¶ 6. Through Copyright Defenders, Plaintiff obtained each Doe Defendant's IP address on the date and time that they engaged in the alleged distribution of the Motion Picture via the BitTorrent protocol.  *Id*. at ¶ 25. Plaintiff compiled this information into a log and attached it as Exhibit A to the Complaint. *Id*. Defendants gained access to the Internet only by setting up an account through various ISPs, identified in Exhibit A.  *Id*. at ¶ 30.  By providing the ISPs with the information in Exhibit A, the ISPs can look up the Defendants' identities by reviewing their respective subscriber activity logs. *Id*. at ¶ 32.   For these reasons, Plaintiff has identified the Doe Defendants with sufficient specificity.

### ii.   Plaintiff has Identified all Previous Steps to Locate Defendants.

This second factor includes as assessment of the prior steps the plaintiff has taken to locate the Defendants. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *2 (citing *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999)). This step ensures Plaintiff has made a good faith effort to comply with the requirements of service of process and specifically identifying all defendants. *Id*.

Copyright Defenders' system inspected file-sharing networks for users that are distributing files labeled with the names of Plaintiff's Motion Picture. Mr. Padewet Decl. at ¶ 23. Copyright Defenders then conducted a download of the respective content and a careful and thorough review of that data.  *Id*. ¶¶ 34-35.  Copyright Defenders obtained the IP address of individual users offering the file for download. *Id*. at ¶ 31.  In addition to the file of the Motion Picture itself, Copyright Defenders downloaded or otherwise collected publicly available

information about the network user that is designed to help Plaintiff identify the infringer. *Id*. at ¶ 25.    Among other things, Copyright Defenders downloaded or recorded for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of infringement; (c) the user's ISP; and, in some cases, (d) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file, (e) the BitTorrent client application used by each user, (f) the global unique identifier for each file downloaded by each user, and (g) the location of most users (by state) at the time of download as determined by geolocation technology. *Id*. Because of the partially anonymous nature of the P2P internet distribution system used by Defendants, Copyright Defenders is unable to determine the true names, addresses, phone numbers, and email addresses of Defendant's.  *Id*. at ¶ 31.

### iii.   Plaintiff's Suit against Defendants Could Withstand a Motion to Dismiss.

Plaintiff's complaint would also survive a motion to dismiss. In its Complaint, plaintiff asserts a federal copyright infringement claim. "To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of plaintiff's work that are original." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (internal quotation marks and citations omitted).

Plaintiff asserts the first element of copyright infringement claim, namely that Plaintiff owns a valid copyright. Plaintiff's Motion Picture, *Teen Anal Sluts*, is the subject of a valid Certificate of Registration, Registration Number PA0001747417, issued by the United States Copyright Office.  Complaint, ¶¶ 24-28; Complaint at Exhibit B. Plaintiff is the copyright owner of exclusive distribution and reproduction rights of this Motion Picture. Complaint at ¶¶ 24-28.

Plaintiff also asserts the second element of a copyright infringement claim, that each Defendant copied constituent elements of Plaintiff's work that are original.  As to this second element of a claim, two separate inquiries must be made: (1) whether the alleged infringer copied the copyrighted material and (2) whether "substantial similarity" exists between the copyrighted work and the allegedly infringing work." *Bridgmon*, 325 F.3d at 576. Both elements exist here. First, each Doe Defendant copied the copyrighted material by reproducing and distributing the Motion Picture via BitTorrent protocol. Complaint at ¶¶ 7-9. As set forth in detail above, each Doe Defendant intentionally logged into a BitTorrent client repository, intentionally obtained a torrent file for Plaintiff's Motion Picture, and intentionally loaded that torrent file into a computer program designed to read the file.  *Id.*  Each Doe Defendant used his or her BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of Plaintiff's Motion Picture.  *Id.*  The program coordinated the copying of Plaintiff's Motion Picture from each Doe's computer to other users sharing the film.  *Id.*  As the Motion Picture was copied to each Doe's computer piece by piece, these downloaded pieces were then immediately available to all other Defendants for their own uses.  *Id.*

Substantial similarity exists between the copyrighted work and the allegedly infringing work. Each of the three torrent files at issue in this suit (Hash 6D5, Hash 6FC and Hash F1F) provide access to an unauthorized copy of Plaintiff's copyrighted Motion Picture. Complaint at ¶¶ 17-18. Individuals at Copyright Defenders carefully reviewed and compared by a visual comparison the Motion Pictures downloaded from each torrent file, Hash 6D5, Hash 6FC and Hash F1F, with the original copyrighted Motion Picture. Mr. Padewet Decl. at ¶¶ 34-35. Copyright Defenders confirmed that the material downloaded from each of the torrent files contains a substantial portion of the Motion Picture identified in the Complaint and that the

432019v.1                                    16

Motion Picture contains a copyright notice and warning that unauthorized copiers will be prosecuted. *Id*.; Complaint at ¶ 29.

### iv.   There is a Reasonable Likelihood of Being Able to Identify Defendants.

There is a reasonable likelihood that Plaintiff's discovery requests to the ISPs will lead to the identification of Defendants such that Plaintiff may effect service of process. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *2 (citing *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. at 580). As set forth above, each ISP assigns a unique IP address to each subscriber. Mr. Padewet Decl. at ¶ 30.  ISPs keep track of the IP addresses assigned to its subscribers at any given moment and retain "user logs" of the information.  *Id*. at ¶ 32.  The true names and capacities of Defendant Does 1-1,341, including subscriber information for each, are within the custody and control of each Defendant Doe's ISP.  *Id*.  Because ISPs provide a service to subscribers, *i.e.*, provide an IP address for internet access, the ISPs must maintain contact information and billing records for each Defendant Doe in order to receive compensation for such services.  Thus, these ISPs can provide this identifying information to Plaintiff.

### d.   The Discovery Sought is Proper as to All 1,341 Doe Defendants.

Federal Rules of Civil Procedure Rule 20 allows multiple defendants to be joined in one action. FED. R. CIV. P. 20(a)(2). The Fifth Circuit describes Rule 20 in the form of a two-prong test that allows joinder when: 1) claims arise out of the same transaction, occurrence or series of transactions and 2) there is at least one common question of law or fact linking all of the claims. *Checkpoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2011 WL 3268386, at *8 (E.D. La. July 28, 2011) (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). Even if this two-prong test is satisfied, a district court may still refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of

fundamental fairness. *Acevedo*, 600 F.3d at 521 (*citing, inter alia,* Applewhite v. Reichhold Chems., Inc., 67 F.3d 571, 574 (5th Cir.1995)).  Regardless, district courts should take a liberal approach to permissive joinder. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

Several federal districts around the country have come to varying decisions about the joining of multiple defendants in BitTorrent infringement cases.  *See MCGIP, LLC v. Does 1-149*, No. 4:2011cv02331, 2011 WL 360766, at *3 (N.D. Cal. Aug. 15, 2011) (providing a sampling of recent decisions).  These varying decisions are highly dependent on the information the plaintiff presented regarding: 1) the nature of the BitTorrent protocol, and 2) the specificity of the allegations regarding the Doe Defendants' alleged infringement. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *5.

### i. Each Doe Defendant Participated in the Same Transaction or Occurrence or Series of Transactions.

All of the Doe Defendants in this suit worked within at least one of three interconnected online swarms to copy, reproduce and share Plaintiff's copyrighted Motion Picture.  Thus, each defendant's activity, by nature, was part of the same transaction or occurrence, or series of transactions. As set forth in detail herein, and in Mr. Padewet's Declaration, each defendant intentionally logged into a BitTorrent client repository, obtained a torrent filed for Plaintiff's Motion Picture, loaded that torrent file into a computer program designed to read that file, initiated simultaneous connections with other users and unlawfully shared copies of the torrent file for Plaintiff's Motion Picture, including with, upon information and belief, other identified John Doe plaintiffs. Mr. Padewet Decl. at ¶¶ 6, 10-18. This program coordinated the copying of Plaintiff's Motion Picture to users' computers from the other users, or peers, sharing the Motion Picture.  *Id.*  As the Motion Picture was copied to each user's computer piece by piece from other

users, these downloaded pieces of Plaintiff's Motion Picture were then immediately available to all other Defendants for those Defendants' uses. *Id.*

Plaintiff identified three interconnected swarms among the 1,341 Defendants.  Complaint at ¶¶ 5, 49; Complaint at Exhibit A.  Each of the peers is a member of at least one swarm or group of BitTorrent peers whose computers are collectively connected for the sharing of a particular hash file for the purpose of the reproduction and distribution of Plaintiff's copyrighted Motion Picture.  Mr. Padewet Decl. ¶ at 21, 23. In addition, it appears that at as many as 23 of the peers participated in multiple swarms, evidencing a commingling between all three swarms. Complaint at ¶¶ 5, 49; Complaint at Exhibit A.  Specifically, the IP addresses of John Does 20, 45, 56, 57, 68, 69, 71, 75, 77, and 88 appear in two swarms, sharing both Hash F1F and Hash 6D5; the IP addresses of John Does 154, 157, 170, 174, 180, 181, 182, 185, 186, 188, 189, 191, and 192 appear in two swarms, sharing both Hash 6FC and Hash 6D5.  Complaint at Exhibit A. Thus, it appears overlap occurred among all three swarms.  *Id.*  For example, the IP address corresponding to  John Doe 20 appears in the swarm sharing Hash F1F and the swarm sharing Hash 6D5.  *Id.*  Given this information, more likely than not John Doe 20 interacted with John Doe 154 (who is a John Doe from Louisiana[1]) and shared Hash 6D5.  *Id.* at ¶¶ 15, 49; Complaint at Exhibit A.  Still further, the IP address corresponding to John Doe 154 also appears in the third swarm sharing Hash 6FC.  Complaint at ¶ 49; Complaint at Exhibit A.  Thus it is likely that Defendants in suit acted collectively, and in concert, in effectuating the illegal and unauthorized sharing of Plaintiff's copyrighted Motion Picture.

Each of these swarms originated with a single seed file. Padewet Decl. at ¶ 8. The initial file-provider intentionally elects to share a file with P2P networks.  *Id.*  This is called "seeding."

---

[1] Upon information and belief, John Doe 154 resides in St. Mary Parish, Louisiana, which is within the Western District of Louisiana.  Complaint at ¶ 15.

432019v.1                                                      19

*Id.* Other users ("peers") on the network connect to the seed file to download. *Id.* Essentially, because of the nature of the swarm uploads and downloads as described herein, every John Doe infringer, in concert with its John Doe swarm members, is simultaneously allowing others to steal (download from the swarm) Plaintiff's copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. Complaint at ¶ 12. This illegal simultaneous data-sharing swarm is performed because each John Doe acts in an interactive manner with other John Does, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action.

Many John Doe Defendants also acted in concert with other John Doe swarm members by participating in "Peer Exchange." *Id.* at ¶ 13; Mr. Padewet Decl. at ¶ 19. Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. *Id.* Peer Exchange is responsible for helping swarm members find more users that share the same data. *Id.* Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries. *Id.*

John Doe Defendants also likely acted in concert with other John Doe swarm members by linking together globally through use of a Distributed Hash Table. Complaint at ¶ 14; Mr. Padewet Decl. at ¶ 20. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. *Id.* Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. *Id.* By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on

the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.  *Id.*

### ii.   There are Questions of Law or Fact Common to All Defendants.

The second requirement of Rule 20 joinder is that a question of law or fact common to all of the defendants will arise in the action.  *Checkpoint*, 2011 WL 3268386, at *9. " Rule 20(a) does not require that every question of law or fact in the action be common among the parties, but rather allows for joinder if there is even one common question."  *Id.*  Here, each defendant is accused of unlawfully copying the same Motion Picture and utilizing at least one of three unique hash identifiers to obtain and share their unlawful copies. Mr. Padewet Decl. at ¶¶ 16-18, 21. Copyright Defenders also confirmed that each unique hash identifier provides access to a copy of the copyrighted Motion Picture.  *Id.* at 23, 34-35.  These common questions of fact are sufficient for joining all defendants. *Patrick Collins, Inc. v. Does 1-2,590*, 2011 WL 4407172, at *6.  Also, each defendant utilized BitTorrent protocol functions to obtain their unlawful copies, and Plaintiff will need to explain how through a common investigation it was able to identify each infringer and collect evidence regarding their infringing activities.  *Id.* (citing *Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011)). These factual issues will be essentially identical for each defendant.  *Id.* While each putative defendant may later present different factual and substantive legal defenses, "this does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)."  *Id.* (quoting *Call of the Wild Movie*, 770 F. Supp. 2d at 343)). However, given the evidence collected by Plaintiff (*e.g.*, confirmation that unlawful uploads were performed by the identified IP addresses that can be linked by ISPs to specific individuals/entities), any such defense would fail.

### iii.   There is no Prejudice to any Party or Needless Delay.

Joinder in a single case of defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and benefits defendants.  *Id*. at *7 (citing *Call of the Wild Movie*, 770 F. Supp. 2d at 344); *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp. 2d 153, 161 (D. Mass. 2008).  It is in the interest of justice, namely the protection of Plaintiff's copyright from illegal file-sharers, that the case move forward in this consolidated format. To require Plaintiff to pursue each individual defendant separately, "would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'"   *Id*. at *7 (citing *Call of the Wild Movie*, 770 F. Supp. 2d at 334) (citation omitted).

Moreover, the Doe Defendants are currently not identified by name, only by their IP addresses.  For this reason, they are not yet required to respond to Plaintiff's allegations, to assert a defense, or even to oppose Plaintiff's motion for leave to take discovery.  *Id*. Thus, Doe Defendants cannot demonstrate any harm or prejudice to them at this time.

### III. Conclusion

For the above referenced reasons, Plaintiff 4: Twenty Media, Inc. respectfully seeks leave of Court to serve limited discovery prior to a Rule 26(f) conference on non-party ISPs to determine the true identities of the Doe Defendants, as well as any other infringers that Plaintiff identifies during the courts of this litigation, and for all other relief as this Court deems just and proper.

Dated:  January 11, 2012                    Respectfully submitted,

                                            _____*/s/ Joseph C. Peiffer*_____
                                            Joseph C. Peiffer
                                            FISHMAN HAYGOOD PHELPS WALMSLEY
                                                WILLIS & SWANSON, L.L. P.
                                            201 St. Charles Avenue, 46th Floor
                                            New Orleans, LA 70170-4600
                                            Tel. (504) 586-5259
                                            Fax (504) 586-5250
                                            jpeiffer@fishmanhaygood.com
                                            *Attorney for Plaintiff 4:Twenty Media Inc.*

# C E R T I F I C A T E

I hereby certify that on January 11th, 2012, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

                                            _____*/s/ Joseph C. Peiffer*_____

432019v.1                                   23