RECEIVED

APR 2 0 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICY OF LOUISIANA
LAFAYETTE DIVISION

4: TWENTY MEDIA INC.,
Plaintiff,

CASE ACTION NO. 6:12-CV-00031-RFD-CMH
JUDGE: REBECCA F DOHORTY
REFERRING JUDGE: C MICHAEL HILL

v.

JOHN DOE, IP Address #67.187.84.11

4/19/2012

MOTION TO QUASH

This motion is structured entirely on a preceding motion written by Richard
N. Koehler II Ohio Bar No. 0031407. My information replaced other defendant's
information where applicable:

Pursuant to Fed. R. Civ. P. 45(c)(3)(A), John Doe, I.P Address#: 67.187.84.11 files this
Motion to Quash Subpoena served upon Custodian of Records, Time Warner Cable Inc.,
because the subpoena requires disclosure of protected information and subjects John
Doe, I.P Address#: 67.187.84.11 to undue burden.

Additionally, the subpoena seeks information that is not relevant given Plaintiff's
inability to link John Doe, I.P Address#: 67.187.84.11 to alleged infringing activity.

John Doe, I.P Address#: 67.187.84.11 is a resident of the City of Knoxville,
Tennessee. Time Warner Cable is an internet service provider (ISP) that provides
internet service to its customers, including John Doe, I.P Address#:
6 7 . 1 8 7 . 8 4 . 1 1 . Plaintiff, 4: Twenty Media Inc., on information and beliefs a
producer of adult entertainment films and content. Plaintiff served a subpoena on
Custodian of Records, Time Warner Cable Inc., to compel the disclosure of documents
to identify the name, address, telephone number, and e-mail address of John Doe, I.P
Address#: 6 7 .187.84.11, so John Doe, I.P Address#: 67.187.84.11 can be named as
a defendant in Plaintiff's copyright infringement action.

John Doe, I.P Address#: .67.187.84.11 has standing to move to quash the subpoena
because it seeks disclosure of personal identification information considered to be
confidential and over which John Doe, I.P Address#: 67.187.84.11 has personal and
proprietary interests. John Doe, I.P Address#: 67.187.84.11 also has standing to
move to quash the subpoena to protect reputational interests. FED. R. CIV.P. 45(c)(3)
(B) allows a person affected by, but not subject to, a subpoena to move to quash the
subpoena.

According to the docket sheet for Plaintiffrs suit, no defendant has been identified, served
with process, or answered. The Western District of Louisiana thus lacks personal jurisdiction
over any of the DOEs at this point. The Western District of Louisiana also
lacks personal jurisdiction over John Doe, I.P Address#: 67.187.84.11

Plaintiff filed an ex parte application for "early discovery" (before a Rule 26(±) conference) so that it could serve subpoenas on ISPs, such as Time Warner Cable Inc, to determine the internet subscriber names, addresses, and e-mail addresses associated with the IP addresses listed in its Complaint.

*The 4: Twenty Media Inc.'s complaint and ex parte request for expedited discovery form yet another in a wave of suits in which copyright infringement plaintiffs seek to "tag" a defendant based solely on an IP address. However, an IP address is not equivalent to a person or entity. It is not a fingerprint or DNA evidence indeed, far from it. In a remarkably similar case in which an adult entertainment content producer also sought expedited discovery to learn the identity of persons associated with IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers...The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, <u>VPR Internationale v. DOES 1-1017</u>, No. 2:11-cv-02068 (Central District of Illinois) (Judge Harold A. Baker) [hereinafter VPR Internationale Order]. The point so aptly made by Judge Baker is that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. **Id.** The risk of false identification by ISPs based on internet protocol addresses is vividly illustrated by Judge Baker when he describes a raid whereby The downloads of pornographic material were traced to a neighbor who had used multiple IP subscribers Wi-Fi connections. **Id.** This risk of false identification and false accusations through disclosure of identities of internet subscribers is also presented here. Given the nature of the allegations and the material in question, should this Court force Time Warner Cable Inc. to turn over the requested information, John DOE I.P Address# 67.187.84.11 would suffer a reputational injury.*

*If the mere act of having an internet address can link a subscriber to copyright infringement suits, internet subscribers such as John DOE I.P Address# 67.187.84.11 will face untold reputational injury, harassment, and embarrassment. The reputational risk that Judge Baker found to be an undue burden is equally presented here: "[W]hether you're guilty or not, you look like a suspect." Moreover, this case presents the same extortion risk that so concerned Judge Baker:*
*"Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case."*

*__Id.__ Discovery is not a game. Yet, plaintiffs in these types of cases use discovery to extort settlements from anonymous defendants who wish to avoid the embarrassment of being publicly associated with this type of allegation. __Id.__ Such abuse of the discovery process cannot be allowed to continue.*

*Additionally, this subpoena should not have been issued in the first place because the information sought is not relevant to Plaintiff's allegations. Implicit in the rule granting subpoena power is a requirement that the subpoena seeks relevant information. See Syposs v. United States, 181 F.R.D. 224, 226 (W.D.N.Y. 199B)('the reach of a subpoena issued pursuant to [FED. R. CIV. P. 45) is subject to the general relevancy standard applicable to discovery under [FED. R. CIV. P. 26(b)(1)].''). The information linked to an IP address cannot give you the identity of the infringer. VPR Internationale Order, at 2. Because the infringer could have been anybody with a laptop passing within range of the router, the information sought by Plaintiff is not relevant to the allegations in any way. __Id.__ Moreover, even if the information has some small amount of relevance to the claim–which it does not-discovery requests cannot be granted if the quantum of relevance is outweighed by the quantum of burden to the defendant. FED. R. CJV. P. 26(b)(2)(C)(iii). Plaintiff's request fails that balancing test. Given that DOE No. 605 was only one of many persons who could have used the IP address in question, the quantum of evidence is miniscule at best. However, as discussed above, the burden to John DOE I .P Address# 67.187.84.11 is severe. The lack of relevance on the one hand, measured against the severe burden of risking a significant reputational injury on the other, means that this subpoena fails the Rule 26 balancing test. __Id.__ Plaintiff's request for information is an unjustified fishing expedition that will cause reputational injury, prejudice, and undue burden to John DOE I.P Address# 67.187.84.11 if allowed to proceed. Good cause exists to quash the subpoena served on Time Warner Cable Inc. to compel the disclosure of the name, address, telephone number and e-mail address of John DOE IP Address# 67.187.84.11. ..*

*John DOE I.P Address# 67.167.84.11 has also supplied Comcast and 4: Twenty Media Inc. with a copy of this document..*

**f.**

Case Action No. 6:12-CV-00031-RFD-CMH

RECEIVED

APR 2 0 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA



TO ISSUE A PROTECIVE ORDER
AND
MOTION FOR LEAVE TO PROCEED
ANONYMOUSLY

INTRODUCTION

Defendant Doe [3] (hereinafter "Doe") makes this limited appearance before this Court for the sole purpose of respectfully requesting that the Court dismiss Doe from this litigation, or in the alternative, grant a protective order preventing disclosure of the materials requested by subpoena issued to the Internet Service Provider ("ISP").

Doe recently received notice from the ISP that it had been served with a subpoena by Plaintiff in connection with the instant case (the "Litigation"). The Subpoena was issued by another Court in a different District. At the same time, Doe was informed for the first time that, as the owner of a given IP address, he is currently identified as a putative defendant in the Litigation. Doe understands that the purpose of the subpoena is to require the ISP to provide Plaintiff with Does name and contact information; so that Plaintiff will then be able to substitute Doe's true name in the Litigation. Doe is now moving for leave to proceed anonymously, to dismiss the allegations against him, and to issue a protective order. Doe is also moving to quash the subpoena in the court that issued the Subpoena. A brief overview of the deficiencies in the Litigation illustrates that the Litigation violates fundamental principles of federal jurisdiction and civil procedure.

In the Litigation, Plaintiff filed a single complaint against multiple defendants, identified simply as a Swarm of defendants. The Complaint alleges that each defendant committed a similar legal violation of copyright infringement by downloading a movie from the Internet; however, the Complaint admits that the Defendants engaged in this conduct separately, independently, at different times, and in different locations. The Defendants are identified only by the IP addresses associated with the computers which allegedly downloaded the information. The Complaint alleges that the owners of the accounts associated with those IP addresses committed the copyright infringement – even though Plaintiffs have no basis for asserting whether the owner or some other authorized or unauthorized user of the computer or computer network committed the violation. Based on this critical – and baseless – assumption, Plaintiffs next sought to learn the identities of the owners of the IP addresses by requesting the Court to issue subpoenas to internet service providers requiring those ISPs to provide the names of the owners of those IP addresses.

[3] Defendant has not received any copies of the papers filed in the underlying litigation and therefore does not know which number "Doe" he is in that litigation. These docmnents will refer to the undersigned Defendant as Doe.

As the arguments set forth herein demonstrate, the instant case is a predatory mass litigation in which Plaintiff has taken unconstitutional shortcuts in violation of the most fundamental principles of the federal courts' procedural safeguards.   Accordingly,  Doe respectfully requests that the Court dismiss Doe from the Litigation, or at the very least, issue a protective order preventing disclosure of information about Doe requested in the subpoena.

I.      **The Court Should Allow John Doe to Proceed Anonymously**

As an initial matter, Doe respectfully requests that he be permitted to proceed anonymously in filing this motion. The only way for defendant John Doe to protect his rights by way of these motions without identifying himself by name is to proceed anonymously.   See 2TheMart.com, 140 F.Supp.2d at 1095-98; Best Western Int'l Inc. v. Doe, No. CV-06-1537, 2006 WL 2091695 at *5 (D. Ariz. July 25, 2006).   Proceeding anonymously is the only method of not rendering moot these proceedings by disclosing the very same information which Plaintiff seeks to obtain through its improper subpoena.  In other words, quashing the subpoena while requiring defendant John Doe to proceed in his own name would entirely defeat the purpose of the motion to quash.  Accordingly, Doe respectfully requests that the Court permit him to proceed anonymously.

II.     **The Complaint Should  Be Dismissed  because the Venue Is not Proper in this District**

Venue for claims asserted under the Copyright Act is governed by 28 U.S.C.  § 1400(a), which requires that a civil suit to enforce the Copyright Act be brought in a judicial district "in which the defendant or his agent resides or may be found." 28 U.S.C.  § 1400(a). Nu Image, Inc. v Does 1-23,322, District of Columbia 11-cv-2021 (7/29/2011).  In Nu Image the United States District Court for the District of Columbia dismissed the plaintiff's complaint based on the reasoning that only 84 defendants out of the more than 23,000 resided in DC.  The Court held that:

It is worth noting here that Plaintiff's counsel has brought similar copyright infringement suits before this Court, and has asserted in each that venue is proper within this District under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a).1

However, when copyright infringement is the sole claim being alleged, it is misleading, and arguably disingenuous, to assert that venue may be proper under section 1391(b), the general venue statute, when section 1400(a) is the exclusive venue statute for copyright infringement actions. As described in the Court's prior order, venue for claims asserted under the Copyright Act is governed by 28 U.S.C.

§ 1400(a), which requires that a civil suit to enforce the Copyright Act be brought in a judicial district "in which the defendant or his agent resides or may be found."

28 U.S.C. § 1400(a). In essence, section 1400(a) requires that every single defendant can be "found here" in order for venue to be proper in this Comi.

**Id**. at pages 3-4.

III.    **The Complaint Should be Dismissed because the Court Does Not Have Personal Jurisdiction over the Defendant**

This Court cannot consider this case unless it has personal jurisdiction over Defendant Doe, and the Plaintiff has failed to meet its burden of establishing that such jurisdiction exists. Generally, the law recognizes that a plaintiff can sue a defendant only in a jurisdiction with which the defendant has a connection, and the plaintiff bears the burden of proving that a constitutionally-sufficient connection exists.   This requirement "gives [ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 297 (1980).

Plaintiff has not met this burden in its Complaint.  The complaint asserts a single piece of identifying information about Doe: his IP address.  Nonetheless, upon minimal investigation, this single piece of information is sufficient to establish that personal jurisdiction over Doe does not exist in this state.  Armed with an IP address, identifying the home state of Doe is very easy. There are numerous publically available websites where any member of the public, including Plaintiff can conduct a search based on an IP address and produce results identifying the general location of the user, including city and state.  For example, a quick search of Doe's IP address on www.ip2location.com  reveals that the IP address associated with Doe's computer is physically located in Tennessee.  Thus, Doe's IP address- the only identifying feature of Doe asserted in the Complaint- establishes that Doe does not reside in this District.

Moreover, Plaintiff fails to identify any other purported contacts that Doe may have with this District, let alone contacts sufficient to satisfy the constitutional minimum contacts threshold.  Importantly, there is no such thing as generalized Internet jurisdiction. Plaintiff appears to suggest that Internet users may be haled . into court anywhere their ISP has other customers, and thus (arguably), has significant contacts. This approach runs directly counter to well-settled constitutional principles and prevailing case law.  In GTE New Media Services Inc. v. BellSouth Corp., the Court of Appeals for the D.C. Circuit rejected just such an expansive theory of jurisdiction. 199 F.3d 1343 (D.C. Cir. 2000).  In that case, plaintiffs asserted that the court had jurisdiction over foreign commercial defendants for the additional reason that they had "entered into an agreement outside of the District with an eye toward attracting Internet users in the District to their websites . . . and thereby draw advertisers away from [plaintiff]." Id. at 1349. The court observed that there was no evidence of financial harm to the plaintiff in the District and squarely rejected the notion that the ability of a D.C. resident to access and use a website was sufficient to establish personal jurisdiction over the operator of the website.  Id.

Thus, the fact that the ISP provider supplies service to other people in this District or is otherwise subject to jurisdiction here due to its own minimum contacts does not change the analysis with regard to the actual defendants in this lawsuit. Merely contracting with an ISP (or

any other corporation) that happens to have other business in this District does not signify any intent of the customer to interact commercially with anyone in this District. The ISP provider operates offices across the nation; the fact that it provides service in this District cannot be the basis for suing its foreign customers here.

Generally, a defendant can be haled into court in a jurisdiction if that defendant has some sort of connection with the jurisdiction.   For example, the D.C. Circuit has found jurisdiction where, unlike here, commercial defendants served customers within the district. In Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 511-13 (D.C. Cir. 2002), the court had jurisdiction over defendant brokerage firm where D.C. residents could open brokerage accounts online and use them to buy and sell securities, transmit funds, borrow and pay commissions and interest. Thus, the court noted, "[a]s a result of their electronic interactions, Ameritrade and its District of Columbia customers enter into binding contracts, the customers become owners of valuable securities, and Ameritrade obtains valuable revenue." Id. at 512-13. In line with this precedent, in Arista Records Inc. v. Sakfield Holding Co. S.L., 314 F. Supp. 2d 27, 31 (D.D.C. 2004), the court held that the evidence that a District of Columbia resident had subscribed to and used a music-downloading website, which required filling out personal information, agreeing to a license agreement, and downloading and installing proprietary software, was sufficient to establish personal jurisdiction over a nonresident website operator in a copyright infringement action brought by record companies.   Unlike these cases, however, in this case defendant Doe is a private individual who has not engaged in any conduct whatsoever directed toward this forum.

Furthermore, the fact that a private individual uploads movies or statements on a file sharing website which may then be downloaded in the District was insufficient to confer personal jurisdiction.   GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).

These decisions are consistent with the general "sliding scale" rules established by courts for determining the proper jurisdiction for suits arising out of Internet activities. Under these "sliding scale" principles, defendants who passively post information on the Internet for others to examine and copy are not subject to personal jurisdiction based on their Internet postings. ALS Scan, Inc. v. Digital Serv. Consultants, 293 F.3d 707, 714-15 (4th Cir. 2002). Further down the scale, defendants whose Internet sites are commercially "interactive," meaning that they design and utilize their websites for the purpose of engaging in business transactions, are subject to being sued in any state in which a substantial number of business transactions occur. Id. In general, the greater the degree of commercial interactivity along this continuum, the greater a defendant's liability for suit in a foreign jurisdiction. Id. Thus, the Fourth Circuit found that there was no personal jurisdiction over a nonresident ISP in a copyright infringement action brought by the owner of photographs against the ISP and its customer who had allegedly published the copyright-protected photographs because the ISP's activities of providing bandwidth to the

customer and publishing the ISP's own website were merely passive; thus, the ISP did not direct its electronic activity specifically at any target in the district and did not manifest an intent to engage in a business or some other interaction in district. **Id.** See also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (maintenance of Internet website accessible to Texas consumers did not support exercise of personal jurisdiction over that defendant); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (no jurisdiction over a Forida corporation which had directed "no commercial activity over the Internet in Arizona. . . . [but only] post[ed] an essentially passive home page on the web"). Cf. Neogen Corp. v. Neo Gen Screening, 282 F.3d 883, 888-89 (6th Cir. 2002) (finding personal jurisdiction where, in addition to other contacts, defendant not only maintained website but provided customers in the district with passwords so they could access confidential test results via that website).

The allegations against Doe in this case do not include claims of commercial interaction with anyone in this District. Instead, Plaintiff simply alleges that Doe (and the other defendants in this case) used a generally-available software program to upload and download bits of copyrighted material via the Internet, just as any passive website owner or participant in a message board discussion might upload and download to and from the Internet. The mere possibility that someone in this District might access data uploaded from Doe's computer is not a constitutionally sufficient basis for subjecting Doe to suit here, where he has done nothing to direct his conduct to this jurisdiction.

In short, requiring Tennessee resident Doe to litigate in this District creates exactly the sort of hardship that the personal jurisdiction requirements exist to prevent. It requires Doe to hire an attorney from this District, where the Doe has no contacts. The cost of hiring an attorney from this District even to defend a defendant's identity (let alone the merits of the case) is likely more than the cost of settlement, and possibly even more than the cost of judgment if Doe was found liable for the alleged violation. Before Plaintiff asks this Court to permit that burden to be imposed upon the Defendant, the Court should direct Plaintiff to establish that this Court has jurisdiction over Doe. It is clear that not only did Plaintiff improperly sue Doe in this District, but also brought suit against hundreds of other defendants in an apparent effort to force all defendants to incur the expense and burden of defending themselves in a foreign District, or forcing them to settle in order to avoid that expense.

Upholding Plaintiffs claims would require proceeding on a theory that the Court may exercise personal jurisdiction over any person across the country, or even the world, so long as the alleged claim involves Internet use. Federal courts have soundly, and quite correctly, rejected this type of approach. Plaintiffs attempt should be rejected here, as well. Therefore, the Court should grant Doe's motion to dismiss for lack of jurisdiction, or in the alternative, require Plaintiff to make an evidentiary showing that personal jurisdiction exists over Doe.

customer and publishing the ISP's own website were merely passive; thus, the ISP did not direct its electronic activity specifically at any target in the district and did not manifest an intent to engage in a business or some other interaction in district.  **Id.**  See also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (maintenance of Internet website accessible to Texas consumers did not support exercise of personal jurisdiction over that defendant); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (no jurisdiction over a Forida corporation which had directed "no commercial activity over the Internet in Arizona. . . . [but only] post[ed] an essentially passive home page on the web").  Cf. Neogen Corp. v. Neo Gen Screening, 282 F.3d 883, 888-89 (6th Cir. 2002) (finding personal jurisdiction where, in addition to other contacts, defendant not only maintained website but provided customers in the district with passwords so they could access confidential test results via that website).

The allegations against Doe in this case do not include claims of commercial interaction with anyone in this District.  Instead, Plaintiff simply alleges that Doe (and the other defendants in this case) used a generally-available software program to upload and download bits of copyrighted material via the Internet, just as any passive website owner or participant in a message board discussion might upload and download to and from the Internet.  The mere possibility that someone in this District might access data uploaded from Doe's computer is not a constitutionally sufficient basis for subjecting Doe to suit here, where he has done nothing  to direct his conduct to this jurisdiction.

In short, requiring Tennessee resident Doe to litigate in this District creates exactly the sort of hardship that the personal jurisdiction requirements exist to prevent.  It requires Doe to hire an attorney from this District, where the Doe has no contacts. The cost of hiring an attorney from this District even to defend a defendant's identity (let alone the merits of the case) is likely more than the cost of settlement, and possibly even more than the cost of judgment if Doe was found liable for the alleged violation.  Before Plaintiff asks this Court to permit that burden to be imposed upon the Defendant, the Court should direct Plaintiff to establish that this Court has jurisdiction over Doe.  It is clear that not only did Plaintiff improperly sue Doe in this District, but also brought suit against hundreds of other defendants in an apparent effort to force all defendants to incur the expense and burden of defending themselves in a foreign District,  or forcing them to settle in order to avoid that expense.

Upholding Plaintiffs claims would require proceeding on a theory that the Court may exercise personal jurisdiction over any person across the country, or even the world, so long as the alleged claim involves Internet use. Federal courts have soundly, and quite correctly, rejected this type of approach. Plaintiffs attempt should be rejected here, as well.  Therefore, the Court should grant Doe's motion to dismiss for lack of jurisdiction, or in the alternative, require Plaintiff to make an evidentiary showing that personal jurisdiction exists over Doe.

The Court concluded that:  Here, as in the plethora of identical cases around the country, joinder is not appropriate for two reasons: (1) Defendants actions do not arise out of the same transaction or occurrence; and (2) permitting joinder would undermine Rule 20(a)'s purpose of judicial economy and trial convenience. Id.

The Court also addressed the plaintiffs argument that the use of BitTorrent is somehow different than the other P2P websites and justifies joinder. Hard Drive Productions, Inc. v. Does 1-188, 2011 U.S. Dist. LEXIS 94319 at *4-5.  The Court noted that:

> a. Use of the "BitTorrent Protocol" is Insufficient to Warrant Joinder
> Plaintiffs sole alleged basis for joinder — its explanation of the "BitTorrent Protocol" — is meritless.  In fact, nothing in the BitTorrent Protocol creates a relationship amongst the hundreds of Defendants residing in all different parts of the country. As one court concluded just four months ago in an identical case: Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue — or even participated in or contributed to the downloading by an of the Does 1-188.... The bare fact that a Doe clicked on a command to participate in the Bit Torrent Protocol does not mean that they were part of the downloading by hundreds or thousands of individuals across the country or the world. Hard Drive Prods., Inc. v. Does 1-188, 2011 U.S. Dist. LEXIS 94319, at *38-39 (N.D. Cal. Aug. 23, 2011); On the Cheap, LLC v. Does 1-5011, 2011 U.S. Dist. LEXIS 99831, at *10 (N.D. Cal Sept. 6, 2011) (stating that joinder would violate the "principles of fundamental fairness" and be prejudicial to the defendants).

> Plaintiff attempts to create the illusion that Defendants made a concerted effort stating that "Defendants have traded (uploaded and downloaded) the exact same file of the copyrighted works in related transactions through torrent software." (See Complaint 5). This representation is misleading.  Even though Plaintiff claims that Defendants downloaded the same file, it has not alleged that Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another. See, e.g., MCGIP, LLC v. Does 1-149, 2011 U.S. Dist. LEXIS 108109, at *7 (N.D. Cal Sept 16, 2011) (finding misjoinder where the plaintiff failed to show that and of the defendants actually exchanged any piece of the seed file with another); Boy Racer v. Does 2-52, 2011, U.S. Dist. LEXIS 86746, at *4 (N.D. Cal. Aug. 5, 2011) (finding misjoinder where the plaintiff did not plead facts showing any particular defendant illegally shared the plaintiffs work with any other particular defendant). This clear lack of concerted effort on the part of the Defendants is dispositive of Plaintiffs joinder argument.

Hard Ddve Productions, Inc. v. Does 1-188, 2011 U.S. Dist. LEXIS 94319 at *4-5.

The claim that joinder is proper based on BitTorrent or other peer-2-peer protocols has been reviewed and almost universally rejected by various Courts. LaFace Records LLC v. Does

1-38, 2008 U.S. Dist. LEXIS 14544, 2008 WL 544992 at 1 (rejecting Plaintiffs argument that copyright infringement claims did not arise out of the same transaction, occurrence, or series of transactions…because each defendant used the same ISP as well as the same P2P networks); See also Interscope Records v. Does 1-25, 2004 U.S. Dist. LEXIS 27782, at 2 (holding improper joinder although defendants were alleged to have disseminated the plaintiffs' copyrighted works through the same P2P network); Elektra Entertainment Group, Inc. v Does 1-9, 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581, at 1 (finding the mere use of the same P2P protocol was insufficient to establish the plaintiffs copyright infringement claims were logically related for purposes of Rule 20(a)(2)); Fonovisa, Inc. v. Does 1-9, 2008 U.S. Dist LEXIS 27170, 2008 WL 919701 (finding joinder improper because of the different factual contexts of the alleged infringement for each defendant and absence a showing of any evidence showing joint action by defendants, other than their use of the same P2P network to access copyrighted recordings); Hard Drive Productions, Inc. v. Does 1-188, 2011 U.S. Dist. LEXIS 94319 (holding joinder of Doe Defendants improper based on alleged use on Bit Torrent protocols; Diabolic Video Productions v. Does 1-2,099, 2011 U.S. Dist. LEXIS 58351, 10 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (held that the nature of the Bit Torrent protocol does not make joinder appropriate where defendants allegedly used BitTorrent to infringe copyrighted works. IO Group v. Does 1-19, 2010 U.S. Dist. LEXIS 133717, *8-9 (N.D. Cal. Dec. 7, 2010). (Holding that the "only factual allegation connecting the defendants" - the allegation that they all used the same peer-to-peer network to reproduce and distribute the plaintiffs copyrighted work – was insufficient for joinder of multiple defendants under Rule 20.); IO Group, Inc. v. Does 1-435, 2011 U.S. Dist. LEXIS 14123, *15-16 (N.D. Cal. Feb. 3, 2011). Lightspeed v. Does 1-1,000, 2011 U.S. Dist LEXIS 35392 (N.D. Ill. March 31, 2011) (plaintiff alleged that the defendants illegally reproduced and distributed its copyrighted works over the Internet through BitTorrent, the court severed defendants because of improper joinder.); Boy Racer v. Does 1-71, 2011 U.S. Dist. LEXIS 57975 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (Severed for improper joinder based on peer-to peer architecture identical to BitTorrent protpocals); Boy Racer v. Does 1-52, 2011 U.S. Dist. LEXIS 58345 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (same)."

Mass joinder of individuals has been roundly rejected by courts in similar cases. As a court explained in one such case, even the purported factual and legal similarities in such cases are insufficient to satisfy the second prong of the Rule 20 test:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Similarly, in LaFace Records, LLC v. Does 1-38, the court ordered severance of a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same alleged violation of the law in exactly the same way. No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008). Despite these similarities, the court found that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." **Id**. This result is clear based on the two-pronged standard of Rule 20, and applies even more strongly here where the second prong – similar questions of fact and law – is much weaker than in LaFace, and the first prong is similarly unsatisfied.

In fact, the improper joinder is so strong in these cases that one court *sua sponte* severed multiple defendants in an action where the only alleged connection between them was the allegation they used the same ISP to conduct copyright infringement. BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D.Cal. July 31, 2006). See also also Interscope Records v. Does 1-25, No. 6:04-cv-197-0rl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate *sua sponte* recommended severance of multiple defendants in action where only connection between them was alleged use of same ISP and P2P network to engage in copyright infringement); BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY), Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elelctra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004) (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, Twentieth Century Fox Film Corp., et al., v. Does 1-12, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Nor does the allegation of a similar method for committing the alleged illegal activity create a basis for joinder. In Nassau County Association of Insurance. Agents, Inc., v. Aetna Life & Casualty, for example, the Second Circuit refused to allow 164 insurance companies to be joined in a single action simply because they allegedly used the same methods to cheat agents, describing that attempted joinder as "a gross abuse of procedure." 497 F.2d 1151, 1154 (2d Cir. 1974). Here, the second prong cannot be satisfied because whether the alleged infringement

concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Thus, Plaintiffs allegations that Defendants committed similar legal violations based on similar downloading conduct is insufficient to satisfy the "common questions of law or fact" standard of Rule 20's second prong. Moreover, it is undisputed that Plaintiff has not alleged and cannot satisfy the joint and several liability or same transaction requirements of Rule 20's first prong. Therefore, joinder is clearly improper in this case and the Court should sever the claims against each defendant. Fed. R. Civ. P. 21. Specifically, the Court should follow the example of courts in similar cases and maintain this action against Doe 1 only and dismiss the claims against all other defendants without prejudice.

## V.    Defendant Doe Moves this Court to Issue a Protective Order

Although courts have not, as a general matter, recognized the right to quash a subpoena (or issue a protective order concerning a subpoena) issued to a different party, courts have found that in some cases, movants who are not the subpoena recipients have sufficient standing based on "the nature of the information sought." See First Indem. of Am. Ins. Co. v. Shinas, No. 03 Civ. 6634, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). Here, Plaintiff seeks to obtain the name and address of the John Doe defendants. Thus, even though the subpoena is not issued to Doe, the information sought is Doe's personal information, and he clearly has an interest in that information sufficient to confer standing here.

Standing may be found when the movant, though not the subpoena recipient, asserts a "claim of privilege," Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2nd Cir. 1975); "has a sufficient privacy interest in the confidentiality of the records sought," ADL, LLC v. Tirakian, No. CV 2006-5076(SJF)(MDG), 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); or seeks to protect "a proprietary interest in the subpoenaed matter," United States v. Nachrunie, 91 F.Supp.2d 552, 558 (S.D.N.Y.2000). See also Ariaz-Zeballos v. Tan, No. 06 Civ. 1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (standing found to quash subpoena issued to non party banks based on movant's "privacy interest in [his] financial affairs") (citations omitted); Ungru· v. Palestinian Auth., 400 F.Supp.2d 541, 553 (S.D.N.Y.2005) (standing to quash subpoena where there was an "excessive number of documents requested, the unlikelihood of obtaining relevant information, and the existence of attorney-client p1ivilege for all documents").

Under Federal Rule of Civil Procedure 26(c), a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Fed.R.Civ.P. 26(c).   It is clear that this mass litigation, including the Subpoena, are pursued solely for the purpose of harassing defendants and forcing them to settle in order to avoid the burden and expense of litigating in a foreign

court. Even if this Court decides not to dismiss the litigation, or not to rule on that motion at this stage in the proceedings, the Court should issue a protective order in order to protect Doe from having his identity revealed to plaintiffs so that they may pursue their predatory scheme against him.

Respectfully Submitted,

*John Doe*

John Doe, IP Address 67.187.84.11

Dated:  04/19/2012

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that one copy of the within motion papers was sent on this date by first class mail to the United States District Comi for the Western District of Louisiana:

U.S. District Court for the Western District of Louisiana
LAFAYETTE DIVISION
800 Lafayette Street
Lafayette, La 70501

I further certify that one copy of same was sent by first class mail on this date to:

Comcast

Fax # (866) 947-5587

John Doe, IP Address 67.187.84.11

*John Doe*

*IP Address 67.187.84.11*

Dated:    04-19-2012__

Date 04/19/2012

RECEIVED

APR 20 2012

The accompanying documents are regarding (16 pages plus cover sheet)

Case Action No. 6 ;12-CV-00031-RFD-CMH

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

For John Doe #67.187.84.11

The documents have been faxed to Comcast @(866) 947-5587

and shipped over-night to

U.S.District Court
Clerk of Court
800 Lafayette St, Suite 2100
Lafayette, LA  70501