IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 4:TWENTY MEDIA, INC.<br><br>Plaintiff,<br><br>v.<br><br>SWARM SHARING HASH FILES 6D59B29B0E51E9B5B4C0F9192CE99ED5EC5457E8;<br>6FC0F9C7F041DC36283D54B1FA29E993EA3EC2A8;<br>F1F946C2054A0F885AC01FB07A935F4F238DD391;<br>AND DOES 1-1,341.<br><br>Defendants. | Case Number: 6:12-cv-00031-RFD-CMH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION THAT THE COURT: (1) RECONSIDER ITS ORDER GRANTING EARLY DISCOVERY; (2) QUASH OUTSTANDING SUBPOENAS; AND (3) SEVER ALL DOES OTHER THAN JOHN DOE NUMBER ONE** |

## *MEMORANDUM OF POINTS AND AUTHORITIES*

In practical effect, the plaintiff 'won' this case almost as soon as it began, when this Court granted plaintiff's ex parte application for early discovery. Since plaintiff's litigation strategy precluded anyone from filing an opposition to plaintiff's application for early discovery, Movant respectfully requests that the Court reconsider its decision granting early discovery, quash the outstanding subpoenas, and sever Does 2-1,341.

## I. BACKGROUND OF THIS COPYRIGHT TROLL LAWSUIT

Perhaps the Court may wonder why a foreign pornographer domiciled in Seychelles filed a copyright infringement lawsuit in the Western District of Louisiana, against 1,341 IP addresses, when only seven of those IP addresses (0.0052%) are located in Louisiana? Plaintiff itself provides the answer to this question in its papers seeking early discovery. Specifically, Plaintiff explains that,

> "This Court permitted plaintiffs to serve a subpoena on an ISP to obtain the identities of Doe defendants (known only by their IP addresses at the time of filing) prior to a Rule 26 conference. Exhibit A, *Interscope Records, et al. v. Does 1-5*, No. 3:07-01424, Docket No. 5 (W.D. La. Aug. 29 2007) (Hayes, Mag. J.)" Plaintiff's Ex Parte Application for Early Discovery, Docket No. 2-1, p. 3.

The *Interscope Records* decision attached as "Exhibit A" to plaintiff's early discovery application is likely the reason plaintiff chose this district in the first place, because plaintiff's *entire business model hinges* on being able to obtain early discovery.

4:Twenty Media, Inc.'s *entire business model* hinges on obtaining early discovery because, apparently, this entity does not actually conduct any business other than bringing copyright troll lawsuits like this one. In fact, it appears that the pornographic film that is the subject of this lawsuit *is not even available for sale*; the film appears to exist solely as bait used to entrap unsuspecting BitTorrent users, who then become the IP address fodder for

lawsuits like this one.  Dec'l. of Morgan E. Pietz ¶ 3.  And as has become increasingly clear from the many similar lawsuits currently plaguing the court system, the key to the profitability of these cases is obtaining early discovery.

As explained in further detail by counsel for another Doe defendant in this action who explains the way these cases work,[1] the most important aspect of this case for the copyright troll is obtaining contact info from Internet Service Providers ("ISP's"). Once the troll has obtained early discovery and begins receiving names from ISP's, it can put its "negotiators" to work soliciting nuisance value settlements from Internet service account holders who do not wish to suffer the adverse impacts of having their name associated with 'the *Teen Anal Sluts* lawsuit.'  Apparently the going rate for the nuisance value settlement in this case is $3,500. Dec'l. of Morgan E. Pietz, Exhibit C.  Based on that figure, and fact that as of 5/29/2012, only 616 John Does out of 1,341 remained in this action, it appears that the Court's decision to grant early discovery has resulted in a windfall for the plaintiff, to date, of approximately $2,537,500.

The copyright troll's second most important objective is obtaining an extension of the service deadline, so that the troll can continue to work the list of names provided by the ISP's for as long as possible without having to actually serve anyone or litigate anything. Thus, it should come as no surprise that the plaintiff in this case already sought an *indefinite* extension of the service deadline.  (Docket No. 114, p. 5).[2]  One particularly prolific troll, Third Degree Films, has filed 14 different lawsuits against 8,273 John Does.  *Not a single one of these John Does has been served as a defendant in any of those 14 lawsuits.*  Third Degree Films' "Technical Expert," styled as the "Copyright Enforcement Group," claims to have collected evidence of infringement against 49,819 defendants, not a single one of which has ever been served.  Here, cursory Internet research reveals that the "Technical

---

[1] John Doe No. 1159's Omnibus Motion to Quash or, in the Alternative, to Sever and Dismiss, pp. 2–4 (Docket No. 74).
[2] John Doe No. 404 was planning to oppose plaintiff's motion for an extension of the service deadline; however, the Court granted it before counsel could prepare an opposition.

-2-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION THAT THE COURT: (1) RECONSIDER ITS ORDER GRANTING EARLY DISCOVERY; (2) QUASH OUTSTANDING SUBPOENAS; AND (3) SEVER ALL DOES OTHER THAN JOHN DOE NUMBER ONE**

Expert," used in this case, one Matthias Schroeder Padewet, lately of "Copyright Defenders,"[3] has been involved in at least three prior mass infringement cases against 8,507 defendants, none of whom have ever been served. Dec'l. of Morgan E. Pietz ¶ 7. *See also Hard Drive Production, Inc. v. Does 1-90*, N.D. Cal. Case No. CV-11-3825 (Docket No. 18 filed March 30, 2012) ("*Hard Drive Prods.*") (Dec'l. of Morgan E. Pietz, Exhibit A) (noting that "According this court's research. . .69 mass copyright infringement cases ha[ve] been filed in this district. Of those, plaintiff obtained early discovery in 57 cases and issued subpoenas to obtain subscriber information for more than 18,000 IP addresses. No defendant has been served in any of these cases.")

As recently explained by one court that granted precisely the relief now requested here by Movant,

> "'*This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena power to obtain sufficient information to shake down the John Does.*'" *In re: Bittorrent Adult Film Copyright Infringement Cases, supra,* E.D.N.Y. Case No. CV-11-3995-DRH-GRB (Docket No. 39 filed 5/1/2012) ("*In re: Adult Film Cases*") (Dec'l. of Morgan E. Pietz, Exhibit B) quoting *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at * 2 (E.D. Va. Oct. 5, 2011).

---

[3] Mr. Padewet, who appears to change the name of his company frequently (perhaps to make it more difficult to find him on PACER?), was previously with "Excubitor USA," "Evidenzia GMbH", and "Copy UG Defense".

In short, every additional day that the plaintiff is allowed to conduct early discovery is another day where the plaintiff collects a windfall as a result of abusing the subpoena power of this Court.

## II.  THE COURT SHOULD RECONSIDER ITS DECISION AND VACATE THE ORDER GRANTING EARLY DISCOVERY, QUASH ALL OUTSTANDING SUBPOENAS, AND SEVER DOES 2-1341

The Court should put an end to the blatant abuse of its subpoena power, as many other courts have done recently, for several reasons.[4]

First, and most fundamentally, the main assumption underpinning these cases is bogus.  As noted by a previous court, "*the assumption that a person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time*."  *In re: Adult Film Cases*, *supra*, Exhibit B at p. 6 (emphasis added).  As explained by the *In re: Adult Film Cases* court, due, in part, to the proliferation of home networks and wireless routers, a single IP address may support multiple Internet users.[5]  *Id.*  Thus, "it is no more likely that the subscriber to an IP address" who is the person who becomes the unfortunate target of the copyright troll's collection efforts, "carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who

---

[4] Since the decision granting early discovery is non-final, the Court clearly has the authority to change its mind pursuant to Fed. R. Civ. Proc. 54(b).  Since early discovery was granted without interested parties being allowed to oppose the application, the result of early discovery has been manifest injustice and a windfall to the plaintiff, and since there is new, highly persuasive authority suggesting that denial of early discovery and severance is the appropriate method for dealing with the plague of copyright troll cases, reconsideration is appropriate.

[5] Carolyn Thompson writes in an MSNBC article of a raid by federal agents who kicked down the door of a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

pays the phone bill made a specific telephone call." *Id.* Accordingly, early discovery should not have been granted. *Hard Drive Prods., supra*, Exhibit A at p. 6 (denying early discovery seeking names from ISP's because "It is abundantly clear that plaintiff's requested discovery is not 'very likely' to reveal identifies of the Doe defendants" and because there was not "good cause" for an exception to the rule against early discovery); *see also Harmony Films Ltd. v. Does 1-739*, N.D. Tex. Case No. CV-10-2412 (Docket No. 7 filed February 7, 2011) (initially granting early discovery but then vacating order granting early discovery after further consideration).

Second, as noted by many other Does in this action, it is glaringly obvious from the face of complaint in this action that personal jurisdiction is not likely to exist for ***almost all*** of Doe defendants. The person alleged to be John Doe 404 is no different; thus person resides in the state of California and has never been to Louisiana or otherwise availed him/herself of the Louisiana court system. Dec'l. of Morgan E. Pietz ¶ 2. It bears repeating that of the 1,341 IP addresses that are the subject of this action, only *seven* of them originate from Louisiana. The personal jurisdiction argument is ably addressed in John Doe No. 1159's omnibus brief, among others, so it will not be repeated here. In short, there is simply no way that participating in a BitTorrent stream is sufficient to support either general or specific jurisdiction in Louisiana.[6]

Third, the John Does were improperly joined in a blatant attempt to abuse the court's subpoena power and avoid paying multiple filing fees, so Does 2-1,341 (at least, those who have not already settled out) should be severed from the instant action. Under Rule 20, parties may be joined when the claims against them arise from a single transaction or a series of closely related transactions. Fed. R. Civ. Proc. 20. Courts, including in several recent decisions, are increasingly holding that these kinds of cases fail on the joinder requirements. *K-BEECH, Inc. v. John Does 1-85*, 2011 U.S. Dist. LEXIS 124581, *3-7 (E.D. Va. Oct. 5, 2011) (finding "the mere allegation that defendants used [BitTorrent] to

---

[6] John Doe 404 reserves the right to make a formal motion to dismiss for lack of personal jurisdiction, in the *highly unlikely* event that he/she were ever to be served with this lawsuit.

-5-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION THAT THE COURT: (1) RECONSIDER ITS ORDER GRANTING EARLY DISCOVERY; (2) QUASH OUTSTANDING SUBPOENAS; AND (3) SEVER ALL DOES OTHER THAN JOHN DOE NUMBER ONE**

copy and reproduce the Work … on different days and times, over a three month period" insufficient to support joinder); *Boy Racer Inc. v. Does 1-60*, 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *Raw Films, Ltd. v. Does 1-32*, 2011 U.S.Dist. LEXIS 114996, *2-7 (E.D. Va. Oct. 5, 2011); *Patrick Collins, Inc. v. Does 1-58*, U.S. Dist. LEXIS 120235, *2-7 (E.D. Va. Oct. 5, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, *6-10 (E.D. Va. Oct. 17, 2011). See also, *Hard Drive Productions, Inc. v. Does 1-188*, 11-cv-01566-JCS, 2011 U.S. Dist. LEXIS, at *7-14 (N.D. Cal. Aug. 23, 2011) (collecting cases); *AF Holdings LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 78636, *4 (N.D. Cal. July 20, 2011) (holding that even though BitTorrent protocols differ from previous peer-to-peer platforms, joinder is improper).

"If the defendants are improperly joined, making the case procedurally defective, [the plaintiff] should have to cure that defect before the case proceeds. Otherwise, [the plaintiff] receives a windfall, misjoining defendants and securing all the necessary personal information for settlement without paying more than a one-time filing fee. *See SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 WL 6002620, at *4 (N.D. Cal. Nov. 30, 2011) (noting "the potential for coercing unjust settlements from innocent defendants trumps Plaintiffs interest in maintaining low litigation costs" and that "a consequence of postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages [plaintiffs in copyright actions] to join (or misjoin) as many doe defendants as possible") (internal quotation marks and citation omitted)." *Patrick Collins, Inc. v. Does 1-10*, D. Md. Case No. CV-12-0094.

The *In re: Adult Film Cases* court recently noted that it appeared that just in that district, three plaintiffs had avoided paying over $100,000 in filing fees. "If the reported estimates that hundreds of thousands of [John Doe] defendants [in mass infringement cases]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION THAT THE COURT: (1) RECONSIDER ITS ORDER GRANTING EARLY DISCOVERY; (2) QUASH OUTSTANDING SUBPOENAS; AND (3) SEVER ALL DOES OTHER THAN JOHN DOE NUMBER ONE**

have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees." *In re: Adult Film Cases, supra*, <u>Exhibit B</u> at p. 23. Here, the plaintiff is no different: by improperly joining Doe defendants who all have different factual circumstances and defenses, plaintiffs have earned an approximate $2.5 million windfall (and counting!), while avoiding $469,350 in filing fees. Thus, this Court should follow the lead of the *In re: Adult Films Court* and sever Does 2-1,341, while permitting the plaintiff to re-file individual complaints against those Does whose IP addresses are located in the Western District of Louisiana, while paying a filing fee for each case.

   Fourth the outstanding subpoenas should be quashed *both* because early discovery should not be allowed, and because Internet users have a Constitutional right to privacy in their Internet activities. The First Amendment right to engage in anonymous speech (*e.g.*, *McIntyre Ohio Elections Comm'n,* 514 U.S. 334, 341–42 (1995)) extends protection to anonymous speech on the Internet, which includes BitTorrent activities. *See Reno v. ACLU,* 521 U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of First Amendment scrutiny that should applied to [the Internet]'"); *accord, Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128. 131 (D.D.C. 2009) ("Such rights to speak anonymously apply. . .to speech on the Internet.") As courts have explained in prior mass infringement cases, file sharing involves aspects of expressive communication. *Sony Music Entm't, Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004). Thus, "file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information." *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. CV-10-455 (Docket No. 40 filed March 22, 2011 at p. 21). Given that the plaintiff is essentially

abusing the justice system in order to obtain easy settlements for infringement of a work that is not actually for sale, its need for the Does information should not override this Constitutional right to anonymous activity on the Internet. Further, given the kind of case this is, the subpoena is clearly unduly burdensome insofar as it requests the Does' email addresses.

Fifth and finally, the Federal Rules of Civil Procedure "direct the Court to deny discovery 'to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.' Fed. R. Civ. P. 26(c)(1). **This situation cries out for such relief**." *In re: Adult Film Cases*, *supra*, Exhibit B at p. 18. It should be obvious what the plaintiff is up to here: coercing people to settle rather than suffer the adverse impacts of having their name associated with the "Teen Anal Slut" lawsuit. The fact that the person on the receiving end of plaintiff's cease and desist letter, who happens to pay the Internet bill, may have had absolutely nothing to do with the purported illegal download of this work is a mere inconvenience. As one judge observed in another of these cases, "Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material." *Digital Sin, Inc. v. Does 1-176*, -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012). Since there is no small chance that completely innocent people are being sucked into the maelstrom of embarrassment and annoyance that the plaintiff has created, this reason alone warrants quashing the subpoenas and severing the Does. Even if the Court were to find some argument of the plaintiff persuasive and were to continue to allow this case to go forward in consolidated fashion, the Court should order the plaintiff and the clerk to keep the names of the Doe defendants who are served (assuming any ever are) under seal.

## III.  CONCLUSION

It is time for the Court to put a stop to plaintiff's ongoing abuse of the Court's subpoena power.  To rule otherwise would cheat the court system of the filing fees on which it partially depends, would permit the plaintiff to continue earning a windfall to which it is not entitled, and would unfairly prejudice hundreds of defendants around the country.  Thus, for the foregoing reasons, John Doe 404 respectfully requests that the Court:

(1) Vacate its order (Docket No. 6) granting early discovery;

(2) Quash all outstanding subpoenas;

(3) Sever each and every one of remaining John Doe defendants numbered 2-1,341 from the current action, including John Doe 404; and

(4) Issue an order: (i) authorizing plaintiff to re-file amended complaints against individuals, out of the remaining John Does 2-1,341, whose IP addresses are located within the Western District of Louisiana, within thirty (30) days, after posting the applicable filing fees for each individual action; and (ii) directing plaintiff and its counsel to comply with this procedure in any future cases filed within the Court's jurisdiction.

Or, in the alternative to the above relief, Movant requests a protective order that all personally identifiable information of the John Doe defendants be kept and remain under seal in connection with this action.

Respectfully submitted, June 1, 2012,

| _/s/ Morgan E. Pietz_ | _/s/ Christine A. Guillory_ |
|---|---|
| *Pro Hac Vice* | *Local Counsel* |
| MORGAN E. PIETZ | CHRISTINE A. GUILLORY |
| California Bar No. 260629 | Louisiana Bar No. 32149 |
| THE PIETZ LAW FIRM | FRILOT, LLC |
| 3770 Highland Ave., Ste. 206 | 1100 Poydras Street, Ste. 3700 |
| Manhattan Beach, CA 90266 | New Orleans LA 70163 |
| Phone: (310) 424-5557 | Phone: (504) 599-8036 |
| mpietz@pietzlawfirm.com | cguillory@frilot.com |

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, the foregoing was submitted to the CM/ECF system which will send notification of such filings to plaintiff 4:Twenty Media, Inc.

                                                */s/ Morgan E. Pietz*

                                                MORGAN E. PIETZ